# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA M. MORGAN-LAPP, | : |
| **Plaintiff,** | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 18-1085 |
| RELIANCE STANDARD LIFE INSURANCE CO., | : |
| **Defendant.** | : |

## MEMORANDUM

**Tucker, J.**                                                        **February 14, 2019**

Before the Court are the Parties' Joint Statement of Stipulated Facts (ECF No. 13), the Administrative Record relating to Plaintiff's underlying insurance coverage claim, which was denied by Defendant (ECF Nos. 13-1 through 13-3),[1] Defendant's Motion for Summary Judgment (ECF No. 14), and Plaintiff's Motion for Summary Judgment (ECF No. 15). Upon consideration of the foregoing and after Oral Argument held before the Court on January 10, 2019, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

## I. RELEVANT FACTUAL AND PROCEDURAL HISTORY

The Parties have filed cross-motions for summary judgment requesting that the Court decide whether Plaintiff's husband, Mr. Lapp, was covered by his employer-provided, Employee Retirement Income Security Act ("ERISA")-governed group life insurance policy ("Policy") when he died. If Mr. Lapp was covered at the time he died, then Plaintiff is entitled to life

---

[1] All citations to the Administrative Record are made to the page number of the Administrative Record contained in ECF Nos. 13-1 through 13-3 and will appear in the form "AR __."

1

insurance proceeds as the beneficiary of the Policy. As set forth in detail below, the Court concludes that the Policy never went into effect for Mr. Lapp. Therefore, when Mr. Lapp died, he was not covered by the Policy.

### A. Thomas Jefferson University Hires Mr. Lapp; The Group Life Insurance Policy

On May 15, 2017, Thomas Jefferson University ("TJU") hired Mr. Lapp. Joint Stat. of Stip. Facts ¶ 6, ECF No. 13. As a TJU employee, Mr. Lapp could receive certain employee benefits, including life insurance under a group life insurance policy issued by Defendant Reliance Standard Life Insurance Company. The Policy, policy number GL 153727, became effective as to the group on January 1, 2015. Joint Stat. of Stip. Facts ¶ 1, ECF No. 13.

### B. Mr. Lapp's Last Day In The Office; His Hospitalization and Death

On May 28, 2017, less than two weeks after TJU hired Mr. Lapp, Mr. Lapp fell ill and was admitted to Kennedy Hospital in New Jersey. Joint Stat. of Stip. Facts ¶ 8, ECF No. 13. Mr. Lapp remained at Kennedy Hospital until June 25, 2017 when he was transferred to Thomas Jefferson Hospital. Joint Stat. of Stip. Facts ¶ 8, ECF No. 13.

On, June 9, 2017, TJU issued its last pay check to Mr. Lapp for the pay period ending on June 6, 2017. AR 125; *see also* Mrs. Lapp Decl. Ex. C, ECF No. 15-1 (showing that his last pay check was for the pay period ending on June 6, 2017).

Eighteen days after his transfer to Thomas Jefferson Hospital, and just over a month and a half after he was hospitalized, Mr. Lapp died at Thomas Jefferson Hospital on July 13, 2017. Joint Stat. of Stip. Facts ¶ 9, ECF No. 13.

### C. Plaintiff Mrs. Lapp Submits A Claim For Death Benefits Under The Policy; Defendant Denies Benefits; Defendant Affirms Decision On Appeal

After Mr. Lapp's death, Plaintiff Mrs. Lapp filed a claim seeking death benefits under the Policy. Joint. Stat. of Stip. Facts ¶ 10, ECF No. 13. By letter dated October 2, 2017, Defendant denied Plaintiff's claim. Joint Stat. of Stip. Facts ¶ 11, ECF No. 13 (citing AR 92–94). In denying Plaintiff's claim, Defendant reasoned that Mr. Lapp was not covered by the Policy when he died on July 13, 2017 because he was not "actively at work" at any time after May 26, 2017, when Mr. Lapp was hospitalized. Defendant took the position that a "person is a member of an *Eligible Class*" only when "said person [is] *Actively at work*." AR 101. As Mr. Lapp was not "performing the material duties of his job in the place where and manner in which it would normally be performed," Defendant continued, Mr. Lapp was not actively at work when he died and, therefore, was not a member of an eligible class. AR 101.

In the alternative, Defendant reasoned that the Policy did not go into effect because Mr. Lapp was not actively at work on the day the Policy was to go into effect. Even if TJU's issuance of a paycheck to Mr. Lapp on June 9, 2017 evidenced Mr. Lapp's "active work"—which Defendant argues it does not—Mr. Lapp's coverage under the Policy nevertheless terminated on June 30, 2017 because Mr. Lapp was no longer a member of an eligible class of TJU employees after receiving his last paycheck from TJU. AR 101.

Plaintiff filed a timely administrative appeal of Defendant's decision to deny Plaintiff's claim, which Defendant affirmed. AR 98–102. Plaintiff then sued Defendant in this Court seeking "declaratory judgment and recovery of benefits . . . arising out [of Defendant's] wrongful denial of Mrs. Lapp's claim for benefits under the terms of her late husband's employee life insurance policy." Complaint ¶ 1, ECF No. 1.

The Parties submitted cross-motions for summary judgment, which are now ripe for decision.

## II. APPLICABLE STANDARDS OF REVIEW

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment in favor of the moving party only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is "material" if it is "one that might 'affect the outcome of the suit under governing law.'" *Smith v. Johnson & Johnson*, 593 F.3d 280, 284 (3d Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to a material fact is "genuine" if it "is one that 'may reasonably be resolved in favor of either party.'" *Lomando v. United States*, 667 F.3d 363, 371 (3d Cir. 2011) (quoting *Anderson*, 477 U.S. at 250).

The movant has the initial "burden of identifying specific portions of the record that establish the absence of a genuine issue of material fact." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015). When assessing a motion for summary judgment, the court "must construe all evidence in the light most favorable to the nonmoving party." *Id.*

The standard of review for cross-motions for summary judgment is identical to the standard applicable to routine motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). "When confronted with cross-motions for summary judgment . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Arsdel v. Liberty Life Assurance Co. of Bos.*, 267 F. Supp. 3d 538, 545 (E.D. Pa.

2017) (citing *Erbe v. Conn. Gen. Life Ins. Co.*, No. Civ.A. 06-113, 2009 WL 605836, at *1 (W.D. Pa. Mar. 9, 2009)).

  B.  **ERISA Review: A Deferential Standard**

The standard of review applicable to a court's review of a denied claim for ERISA benefits depends on whether the ERISA plan administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 246 (3d Cir. 2017) (quoting *Conkright v. Frommert*, 559 U.S. 506, 512 (2010)) (internal quotation marks omitted). Where, as here, the ERISA plan administrator has such discretionary authority to construe the terms of the plan, courts must review "the administrator's decision on a more deferential basis." *Id.* (quoting *Conkright*, 559 U.S. at 512).[2]

Where the "more deferential" standard of review applies, the court may "not set aside the administrator's interpretations of 'unambiguous plan language' as long as those interpretations are 'reasonably consistent with the plan's text . . . and [the court] will only disturb the administrator's interpretations of ambiguous plan language when those interpretations are 'arbitrary and capricious.'" *Id.* (citing *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012)) (internal citation omitted). The Third Circuit has further instructed that:

---

[2] The Parties agree that the "more deferential" arbitrary and capricious standard applies in this case. *See* Def.'s Mem. Supp. Mot. for Summ. J. 4, ECF No. 14-2 (explaining that "[b]ecause the Plan grants to Reliance Standard discretion to determine eligibility for benefits, this Court must conduct a deferential arbitrary and capricious review."); *see also* Pl.'s Mot. Summ. J. 3 (providing a summary of the arbitrary and capricious standard of review applicable "in the ERISA context"). The Policy itself provides that "Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." AR 24. As Defendant has discretion under the Policy to construe the Policy's terms, Defendant's decision on Plaintiff's benefit claim will be reviewed under the deferential arbitrary and capricious standard.

5

> Whether plan language is ambiguous or unambiguous is itself a question of law subject to our *de novo* review, with the definition of ambiguity being language that is "subject to reasonable alternative interpretations." *Id.* (quoting *Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1233 (3d Cir. 1991)). Many cases will therefore turn . . . on whether a proffered interpretation of plan language is "reasonable."

*Dowling*, 871 F.3d at 245–46.

## II. DISCUSSION

As explained below, and in view of the deferential standard of review that the Court is obligated to apply in this ERISA case, the Court concludes—though not without distress over the unfortunate results—that Defendant's interpretation of the Policy is reasonable and, therefore, Defendant's decision to deny Plaintiff any life insurance benefits for the death of her husband is affirmed.

In the underlying ERISA administrative proceedings, Defendant articulated three reasons for denying Plaintiff's claim for insurance coverage under the Policy. First, Defendant reasoned that Mr. Lapp no longer qualified for coverage as of May 26, 2017—the last day Mr. Lapp worked at the office before his hospitalization—because he was not "actively at work" by virtue of his absence from the office and, therefore, was not "eligible" under the Policy's "eligibility requirements." AR 98–102. Second, Defendant reasoned that even if Mr. Lapp remained an eligible TJU employee after his last day of work the Policy did not take effect for him because he was not "actively at work" on June 1, 2017—the date on which his coverage was scheduled to begin as a newly hired TJU employee. *Id.* Third, Defendant reasoned that even if Mr. Lapp remained an eligible TJU employee and could be considered "actively at work" because he received payment as a full-time employee through June 6, 2017, Mr. Lapp's coverage under the

Policy nevertheless terminated on June 30, 2017—the last day of the month in which Mr. Lapp was last eligible to receive benefits. *Id.*

The Court refrains from deciding the reasonableness or unreasonableness of Defendant's first and third reasons for denying Plaintiff's insurance claim and, instead, concludes only that its second reason is enough to uphold Defendant's decision given the deferential standard of review applicable in this case. In short, the Court concludes that while Mr. Lapp may have met the eligibility requirements under the Policy, the Policy did not take effect on June 1, 2017 because Mr. Lapp was not actively at work that day or any day thereafter.

### A. Relevant Provisions Of The Policy

#### 1. Eligible Classes Of Employees

Under the Policy, six classes of TJU employees are entitled to basic and supplemental death benefits. Joint Stat. of Stip. Facts ¶ 2, ECF No. 13. The Parties agree that, to the extent that Mr. Lapp was eligible under the Policy for such death benefits, he was eligible as a "Class 3" TJU employee. Joint Stat. of Stip. Facts ¶ 4, ECF No. 13. Class 3 employees are "active, regular Full-time and Part-time benefit eligible employee[s] of Thomas Jefferson University, Thomas Jefferson University Hospital . . . not included in any other class." Joint Stat. of Stip. Facts ¶ 4, ECF No. 13 (citing AR 5). Full-time employees are those "working, or scheduled to work . . . for a minimum of 35 hours during a person's regularly scheduled work week." AR 9.

#### 2. Eligible Employees Must Be "Actively At Work" On The Day That Coverage Is Scheduled To Take Effect

For newly hired Class 3 employees, individual coverage begins on "[t]he first of the month coinciding with or next following the date the person becomes eligible." Joint Stat. of Stip. Facts ¶ 4, ECF No. 13; AR 5. If, however, "the person is not actively at work on the day his/her insurance is to go into effect, the insurance will go into effect on the day he/she returns to

7

Active Work in an Eligible Class for one full day." AR 15. That an eligible employee must be "actively at work" for coverage to take effect under the Policy is, thus, an explicit condition to the effectiveness of the Policy for any individual eligible employee.

### 3. "Actively At Work" And "Active Work" Defined

The terms "actively at work" and "active work" are, in turn, defined under the "Definitions" section of the Policy to mean:

> [T]he person actually performing on a Full-time or Part-time basis each and every duty pertaining to his/her job in the place where and the manner in which the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of injury or illness.

AR 9. Under this definition, a newly hired Class 3 employee must be "actually performing" his job on the day his coverage is set to go into effect or else the Policy will not take effect unless and until the employee returns to "active work."

### 4. Mr. Lapp Was Not Actively At Work On The Day His Coverage Was To Begin; Therefore, Mr. Lapp's Coverage Did Not Take Effect

Setting aside the question of whether Mr. Lapp's failure to report to the office at any time after his hospitalization on May 28, 2017 rendered Mr. Lapp not "actively at work" in connection with his eligibility for benefits, the Court concludes that the Policy did not take effect for Mr. Lapp at any time before his death because not only was he not "actively at work"—that is, actually performing work on the day his coverage was scheduled to begin in the place and manner that such work normally is performed—Mr. Lapp also never returned to active work at any time before he died on July 13, 2017.

TJU hired Mr. Lapp on May 15, 2017 as an eligible Class 3 full-time TJU employee. As Mr. Lapp was hired in the middle of May, his coverage under the Policy was set to begin on June

8

1, 2017, as the "first of the month . . . next following the date the person becomes eligible" for benefits. AR 5. On Sunday, May 28, 2017, however, Mr. Lapp fell ill and was hospitalized.

On June 1, 2017, the day on which his life insurance coverage was scheduled to begin, Mr. Lapp was unable to report for work, having been hospitalized just days earlier. From the hospital, he was not able to "actually perform[] on a Full-time . . . basis each and every duty pertaining to his[] job in the place where and the manner in which the job is normally performed." AR 9; *see* Joint Stat. Stip. Facts ¶¶ 7–9, ECF No. 13 (establishing that "Mr. Lapp last worked on May 26, 2017" and that Mr. Lapp remained hospitalized until he "died on July 13, 2017"). The hospital was indisputably not the "place where . . . [his] job is normally performed" and Mr. Lapp was not, on June 1, 2017, "actually performing" "each and every duty pertaining to his[] job" on a "Full-time basis." AR 9.

That Mr. Lapp was not actively at work on June 1, 2017 is supported by evidence contained in the administrative record as well as evidence that Plaintiff has submitted to supplement the record, though the Court's review in this case is constrained to the administrative record.

Record evidence in the form of the Proof of Loss Claim Statement that Plaintiff submitted in connection with her request for coverage and other documents showing that Mr. Lapp applied for Family Medical Leave Act ("FMLA") and Short Term Disability ("STD") leave supports the conclusion that Mr. Lapp was not actively at work on the day his coverage was scheduled to take effect. Among other things, the Proof of Loss Claim Statement submitted as part of Plaintiff's claim for coverage, shows that Mr. Lapp's "[d]ate [] [l]ast [w]orked" was "5-26-17" and further shows that Mr. Lapp's "[s]tatus . . . on [d]ate of [d]eath" was "[o]ther . . .

9

[a]pplied for FMLA/STD" and not "active." AR 119–20. The Proof of Loss Claim Statement also shows that the reason that Mr. Lapp "[s]topped [w]orking" was "[i]llness." AR 119.

The characterizations of Mr. Lapp's work status and reasons for stopping work on May 26, 2017 are consistent with other documents showing that Mr. Lapp sought—and was ultimately denied—FMLA and STD leave for a period beginning on May 28, 2017 or May 30, 2017. *See, e.g.*, AR 107 (Employee Summary of Geoffrey F. Lapp – Leave of Absence #579719680329) (showing that requests for FMLA and STD leaves of absence were denied for a period beginning on May 28, 2017); AR 114 (showing that FMLA leave of absence had been denied for a period beginning on May 30, 2017). Had Mr. Lapp been actively at work on June 1, 2017, there would be no need to seek FMLA, STD, or any other form of leave beginning on May 28, 2017 or May 30, 2017.

Even the evidence extrinsic to the administrative record submitted by Plaintiff, while not properly before the Court, supports the conclusion that Mr. Lapp was not actively at work on June 1, 2017. According to Plaintiff's declaration, after Mr. Lapp became ill, he had conversations with his supervisors about "being able to work remotely, *i.e.* do his work from a location <u>other than at TJU's physical location</u>." Mrs. Lapp's Decl. ¶ 5, ECF No. 15-1 (citing Email from Mark C. Laspada to Geoffrey Lapp (May 30, 2017)). Plaintiff's statement is consistent with the proposition that Mr. Lapp's "place where . . . [his] job is normally performed" was "TJU's physical location," and nowhere else. Thus, when Mr. Lapp did not report for work on June 1, 2017, he was not "actively at work" performing his normal duties in the place where they are normally performed.

Similarly, Plaintiff explains in her declaration that she observed Mr. Lapp using a "laptop computer that he used primarily for work" "on several occasions" "[a]fter [Mr. Lapp] became

sick." Mrs. Lapp Decl. ¶ 6, ECF No. 15-1. This statement supports the conclusion that if Mr. Lapp was indeed performing any work while in the hospital, his work "on several occasions" would not meet the required "full-time" work requirement as defined under the Policy to mean "working, or scheduled to work, for . . . a minimum of 35 hours during a person's regularly scheduled work week." AR 9. While the Court may not properly consider the extrinsic evidence submitted by Plaintiff, the extrinsic evidence nevertheless supports the conclusion compelled by the evidence contained in the administrative record.

### 5. Plaintiff's Argument That The "Actively At Work" Language Does Not Apply In This Case Is Rejected

In an effort to avoid the "actively at work" language that governs when coverage for a newly hired employee goes into effect, Plaintiff argues that the "actively at work" requirement carries no weight in the present dispute because the requirement does not appear on the physical page of the Policy dealing with "eligible classes" but, instead, is "buried within the policy." Pl.'s Mot. Summ. J. 8, ECF No. 15. If the "actively at work" language applies at all, Plaintiff continues, it applies "only when there is a defined change in an employee's status to someone not deemed an active employee" such as a retiree, which was not the case for Mr. Lapp. Pl.'s Mot. Summ. J. 5, ECF No. 15. Thus, Plaintiff concludes, the "actively at work" language has no bearing on the present dispute.

In so arguing, however, Plaintiff fails to draw a critical distinction between two issues: (1) whether Mr. Lapp was an eligible person—a member of an eligible class of TJU employees—and (2) whether the Policy was in effect when Mr. Lapp died. As to the first issue, there is no dispute that Mr. Lapp was an eligible person having met the eligibility requirements as a Class 3 employee under the Policy. *See* Joint Stat. of Stip. Facts ¶ 3, ECF No. 13. However, as to the second issue, the Policy was not in effect for Mr. Lapp because he was not

"actively at work" on June 1, 2017—the first of the month following Mr. Lapp's satisfaction of the Policy's eligibility requirements. The "actively at work" language appears in the section of the Policy titled "Individual Eligibility, Effective Date and Termination" and, therefore, the language applies, at a minimum, to this section even if it may not apply to the "Schedule of Benefits" and "Eligible Classes" sections of the Policy. *See* AR 15 (invoking the terms "Actively at Work" and "Active Work" into the "Individual Eligibility, Effective Date and Termination" section of the Policy).

### 6. The Court Rejects Plaintiff's Argument That The Definition Of "Actively At Work" Is Otherwise Vague And Ambiguous And Must Be Construed Against Defendant As The Drafter Of The Policy

Plaintiff argues that even if the "actively at work" provisions can be construed to apply to the eligibility requirements section of the Policy, the term "actively at work" has been construed by courts to "refer to the employee's status and not whether he was at his work location on a particular date." Pl.'s Mot. Summ. J. 5, ECF No. 15. As explained above, in reaching the conclusion that Mr. Lapp was not covered by the Policy when he died, the Court need not opine on the Defendant's position that the defined term "actively at work" applies to eligibility determinations under the Policy. Therefore, to the extent that Plaintiff's argument implies that the "actively at work" provision of the Policy operates as a condition to eligibility, Plaintiff's argument is moot.

The Court also rejects Plaintiff's argument to the extent that it suggests that the term "actively at work" as defined in the Policy and as interpreted by Defendant—an ERISA plan administrator—is unreasonable because it is vague and ambiguous. In support of her argument, Plaintiff relies heavily on *Tester v. Reliance Standard Life Ins. Co.*[3] and *Kaelin v. Tenet*

---
[3] 228 F.3d 372 (4th Cir. 2000).

*Employee Benefit Plan.*[4] See Pl.'s Mot. Summ. J. 9, ECF No. 15 (concluding that "[u]nder these circumstances, [as] in *Tester* and *Kaelin*, Reliance's strained reading of its own policy language should be rejected and plaintiff's motion for summary judgment should be granted"). Plaintiff's reliance on these cases is misplaced, however, because neither case is binding on this Court—*Tester* having been decided by the Fourth Circuit and *Kaelin* having been decided by another court in this District—and both cases are distinguishable from the present case.

### i. The Fourth Circuit's Decision In *Tester*

*Tester* is distinguishable for at least two reasons: (1) there, the Fourth Circuit reviewed the defendant's ERISA decision *de novo* whereas, here, the Court must apply the deferential arbitrary and capricious standard of review; and (2) the issue resolved by the court in *Tester* is distinct from the issue presented in this case.

First, the Fourth Circuit's application of *de novo* review is the most obvious basis for distinguishing *Tester* from the present case; especially in ERISA cases, the standard of review may greatly influence the outcome of any case. Indeed, depending on the applicable standard of review, courts deciding ERISA cases have arrived at opposing conclusions in cases involving near identical fact patterns. *Compare McDermott v. GMAC Mortgage Group, LLC*, 389 F. App'x 153 (3d Cir. 2010) (not precedential) (applying *de novo* review and affirming trial court decision that favored insured) *with McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537 (M.D. Pa. 2011) (applying deferential standard of review to similar facts, and affirming ERISA administrator's decision to deny benefits as reasonable) *and Brown v. First Reliance Standard Life Insur. Co.*, Civ. Action No. 10-486, 2011 WL 1044664 (W.D. Pa. Mar. 18, 2011) (same).

---

[4] 405 F. Supp. 2d 562 (E.D. Pa. 2005).

Juxtaposition of the foregoing cases shows how the applicable standard of review will affect the outcomes of cases involving analogous facts.

Second, *Tester* is distinguishable from the present case because the issue resolved by *Tester* is distinct from the issue presented in this case. The issue presented and decided in *Tester* was whether a decedent who had taken a medical leave of absence before his death was "a member of an eligible class" of "active, Full-time employee[s]" such that the decedent's beneficiary under a life insurance policy would be entitled to death benefits under the policy. *Tester*, 228 F.3d at 375. The issue, therefore, was one of "eligibility." In this case, the Court confronts the issue of whether the Policy had taken effect, not whether Mr. Lapp was eligible under the Policy. Indeed, the distinction between "eligibility" under a policy versus "effectiveness" of a policy was critical in the Fourth Circuit's disposition of *Tester*. In holding that the decedent's medical leave and absence from work did not affect his eligibility for coverage under the policy, the Fourth Circuit emphasized that all "actively at work" or "active work" provisions in the policy were used only "with respect to *effective* date, not *eligibility*." *Id.* at 376. The Fourth Circuit continued, while "[t]hese terms have specific meanings within the provisions that include them, [] they are absent in the eligibility provision, and thus, do not control in defining 'active[]'" as the term "active" was used in the eligibility section of the policy. *Id.*

As discussed in detail above, the Court has concluded that the "actively at work" provision of the Policy applies in connection with the effective date of Mr. Lapp's coverage, not in connection with Mr. Lapp's eligibility. Therefore, the holding in *Tester* has little persuasive value in resolving the present case.

### ii. The District Court's Decision In *Kaelin*

As the court in *Kaelin* adopted and applied the rationale in *Tester*, *Kaelin* is distinguishable from the present case in much the same way that *Tester* is distinguishable. First, the court in *Kaelin* applied a standard of review—"significantly heightened arbitrary and capricious standard of review"—that is no longer good law in the Third Circuit. *Kaelin*, 405 F. Supp. 2d at 562. At the outset, the district court outlined the Third Circuit's *Pinto* "sliding scale method" for setting a "heightened form" of review in certain ERISA cases. *Id.* at 573 (citing *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir. 2000)). The Third Circuit has since specifically disavowed the *Pinto* sliding scale method stating that the "'sliding scale' approach is no longer valid" in light of the Supreme Court's decision in *Met. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008). *Schwing v. The Lilly Health Plan*, 562 F.3d 522 (3d Cir. 2009)); *see also Brown*, 2011 WL 1044664 at *5 (recognizing that the sliding scale approach is no longer valid). In view of the Third Circuit's rejection of the sliding scale approach, *Kaelin* offers little analytical assistance in this case.

Second, just as the issue presented and decided in *Tester* is distinct from the issue presented in this case, so too is the issue in *Kaelin*. The district court in *Kaelin* considered whether "plaintiff was eligible for benefits" where the ERISA administrator contended that the plaintiff was not an "active, Full-time employee" and, thus, "not a 'member of the eligible class." *Kaelin*, 405 F. Supp. 2d at 585–86. This issue of whether the plaintiff was eligible for benefits paralleled the issue in *Tester*, but differs from the issue in this case: whether Mr. Lapp's insurance had taken effect. Accordingly, the decision in *Kaelin* is distinguishable and unpersuasive.

### B. Plaintiff's Breach of Contract Claim Is Preempted By ERISA And, Therefore, Is Dismissed

Having addressed the merits of Plaintiff's ERISA claims by affirming Defendant's administrative decision as reasonable, the Court will also dismiss Plaintiff's claim for breach of contract because the claim is preempted. It is well-established that in cases alleging the improper denial of benefits under an ERISA plan, claims such as "breach of contract" and "breach of the implied covenant of good faith and fair dealing" that "relate to the improper denial of benefits . . . . under the plan" are "expressly preempted." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 (3d Cir. 2014).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 14) is GRANTED and Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED. An appropriate Order follows.